**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
:
**ROBERT SPOTSWOOD,**                                    :
                                                         :
          Plaintiff,                  :    Civil Action No. 15-3518 (ES)
                                                         :
    v.                                                 :
                                                         :
**HERTZ CORPORATION,**                                   :    **OPINION**
                                                         :
          Defendant.                  :
_____:

## I.   INTRODUCTION

This matter comes before the Court on the motion of Defendant Hertz Corporation ("Defendant" or Hertz") to transfer this matter to the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1404(a). See Def.'s Mot. to Transfer, June 26, 2015, D.E. 11-1; see also Certification of John D. Tortorella, Esq. in Supp. of Def.'s Mot. to Transfer, June 26, 2015, D.E. 11-2 (hereinafter "Tortorella Cert."). Pursuant to Federal Rule of Civil Procedure 78, and Local Civil Rule 78.1, the Court decided this motion without oral argument. For the reasons set forth below, the Court will grant Defendant's motion to transfer.

## II.   BACKGROUND

This matter is a putative consumer class action regarding automobile rental transactions. Hertz is a car rental corporation, which is incorporated in Delaware, and maintains its principal place of business in Naples, Florida. See Compl., Apr. 6, 2015, Exh. A to Notice of Removal, D.E. 1 (hereinafter "Compl."), at ¶ 6; see also Declaration of Dennis McGinley in Supp. of Def.'s Mot. to Transfer, June 26, 2015, D.E. 11-3 (hereinafter "McGinley Decl."), at ¶ 2. It

appears that at least until May 2013, Defendant's principal place of business was located in Park Ridge, New Jersey. Compl., at ¶ 6; see also Hertz Press Release, Declaration of Maureen V. Abbey, Esq. in Opp'n to Def.'s Mot. to Transfer, Aug. 3, 2015, D.E. 18-3 (hereinafter "Abbey Decl."), at Exh. 3; Hertz Corp. Disclosures, Abbey Decl., Exs. 4-5.

Plaintiff Robert Spotswood alleges that on July 3, 2013, he rented a car from Hertz at its Baltimore Washington International Airport ("BWI") location. Compl., at ¶¶ 5, 9. At all relevant times, Plaintiff resided in Alabama. Id. Also, Plaintiff was a member of Hertz's #1 Gold Club Program (the "Gold Program"), which "is a program administered by Hertz, which stores customer agreements [related to the] Rental Agreement that governs Hertz rentals in the United States and Canada." Id. at ¶ 10. Plaintiff agreed to Defendant's Terms and Conditions (the "Terms"), which consisted of: (i) the Rental Agreement, which set forth terms for all Hertz rental customers, including fees that Hertz could charge for damage to its vehicles, and (ii) the Rental Record, "which contains estimated charges, [the] rental location, rental car number, and other transaction specific information[.]" Id. at ¶¶ 10-12; see also Terms and Conditions, Tortorella Cert., Ex. A; Rental Record, Tortorella Cert., Ex. B.

The Rental Record did not change any material terms in the Rental Agreement. Instead, the Rental Record and the Rental Agreement together form the contract at issue in this case. Compl. at ¶¶ 10-13.[1] Plaintiff represents that the Rental Agreement he executed is "substantially the same as the one all Class Members agreed to, whether they agreed to it through the [Gold Program] or at the inception of the rental period." Id. at ¶ 11. More specifically, the "only difference between customers under either scenario is the date on which he or she agreed to the Rental Agreement." Id.

---

[1] For ease of reference, the Court will refer to Hertz's agreement with its customers, which consists of both the Rental Record, and the Rental Agreement, collectively as the "Rental Agreement."

2

On July 5, 2013, Plaintiff damaged his rental car in an accident in St. Michaels, Maryland. Id. at ¶ 17; see also Vehicle Incident Report, Tortorella Cert., Ex. C; McGinley Decl. at ¶ 5. Plaintiff filed a claim through his American Express insurance for damage caused by the accident. Compl. at ¶ 18. After processing his claim, American Express rejected Plaintiff's request for payment of the following three fees Hertz charged in connection with the accident: (i) Loss of Use Fees, (ii) Administration Fees, and (iii) Diminishment of Value Fees (collectively, the "Rental Fees"). Id. at ¶¶ 19-23.

Plaintiff asserts that the Rental Agreement limited the amount customers had to pay for car damage, and expressly precluded Hertz from charging the Rental Fees. Id. at ¶ 16. On April 6, 2015, Plaintiff filed this putative class action in the Superior Court of Jersey, Law Division, Bergen County, on behalf of all "persons in the United States who rented a vehicle from Hertz within the period beginning six (6) years before this complaint was filed through the present, and who were charged [the Rental Fees] for damage and/or loss occurring to a Hertz rental car." Id. at ¶ 44. Plaintiff and the class assert claims for violation of the New Jersey Consumer Fraud Act, unjust enrichment, and breach of contract. See id. at ¶¶ 47-79. Defendant removed this case from the Superior Court on May 22, 2015. See Notice of Removal, May 22, 2015, D.E. 1.

### III. ARGUMENTS

#### A. DEFENDANT

Hertz seeks to transfer this matter to the United States District Court for the District of Maryland for two reasons. First, Hertz asserts that Maryland is the proper venue for this case because Plaintiff agreed to litigate there under a valid forum selection clause located in the Terms and Conditions. See Terms and Conditions, Tortorella Cert., Ex. A, at 8; see also Brief in Support of Def.'s Mot. to Transfer at 3-7. Defendant's Terms and Conditions provide, in

3

pertinent part, that:

> With regard to any Program rental entered into by You, the substantive law of the jurisdiction(s) in which the rental commences will apply, without giving effect to the choice of law rules thereof, and You irrevocably and unconditionally consent and submit to the nonexclusive jurisdiction of the courts located in that jurisdiction.

The Terms and Conditions also provide:

> With regard to Your Enrollment or membership in the Program (as opposed to any Program rental entered into by You), the law of the jurisdiction(s) in which the Enrolling Company has its principal executive office will apply, and You irrevocably and unconditionally consent and submit to the nonexclusive jurisdiction of the courts located in that jurisdiction.

Terms and Conditions, at 8, at Exh. A to Tortorella Cert., June 26, 2015, D.E. 11-2.

Hertz argues that the Clause contains two separate provisions: (1) the first provision applies to "any Program rental[;]" and (2) the second provision applies to a customer's enrollment "or membership in the [Gold] Program." Def.'s Reply Br., Aug. 17, 2015, D.E. 22, at 3. Hertz urges the Court, in deciding the motion to transfer, to focus on the first provision. Hertz argues that Plaintiff's case seeks damages for the alleged improper Rental Fees that Hertz charged, which occurred because the class members rented cars from Hertz, and that membership in the Gold Program is irrelevant. See id. at 3-4. According to Hertz, Maryland is the proper venue under the forum selection clause because Plaintiff's rental "commenced" in that jurisdiction. See id.; see also Def.'s Mot. to Transfer, at 5-8, June 26, 2015, D.E. 11-1; Terms and Conditions, Tortorella Cert., Ex. A, at 8.

Defendant also asserts that under § 1404(a), venue is proper in Maryland because a "substantial part of the events or omissions giving rise" to Plaintiff's claim occurred there and not in New Jersey. Def.'s Mot. to Transfer, at 5 (citing 28 § U.S.C. 1391(b)(2)). By way of example, Hertz contends that the parties executed the Rental Agreement in Maryland. See Def.'s

4

Reply Br., at 2-3. The Terms specify that the "[Rental] Agreement is entered into, and the rental of the Car using the Program commences, when You [the customer] take possession of the Car." Terms and Conditions, Tortorella Cert., Ex. A, at 7. Defendant argues that in fact and under the Terms, the parties executed the Rental Agreement at BWI in Maryland, and usage of the rental commenced there. See Def.'s Reply Br. at 2-3. Defendant further argues that Plaintiff's claim did not arise in New Jersey because the accident, which led to the Rental Fees at the heart of this class action, also occurred in Maryland. Id. at 2-4.

Hertz also argues that the private and the public interest factors of § 1404(a) weigh in favor of transfer. For instance, Hertz argues that Plaintiff's choice of forum is entitled to no deference because the Clause required Plaintiff to file this case in Maryland. See id. at 11. Regarding the public interest factors, Defendant asserts that Maryland is the more appropriate forum because, among other things, Maryland has a stronger public interest since the parties formed the Rental Agreement there, and resolution of this matter will require application of Maryland law. Def.'s Br. in Supp. of Transfer at 14-19.

### B. PLAINTIFF

In opposition, Plaintiff argues that the second provision of the forum selection clause, not the first, governs this dispute. See Pl.'s Opp'n Br., Aug. 3, 2015, D.E. 17, at 2-5. Plaintiff argues that under that provision, the parties agreed to the jurisdiction of New Jersey courts and the application of New Jersey law. Id. at 5-8.[2] Plaintiff claims that the core dispute here concerns his enrollment or membership in the Gold Program, and the Rental Fees associated with the Program. Furthermore, Plaintiff alleges that because Defendant's corporate

---

[2] Plaintiff disputes that he received the version of the Terms and Conditions, which Defendant submits in support of its motion to transfer. See Pl.'s Opp'n Br. at 1-3. Nonetheless, he agrees that the Clause is identical in both versions of the Terms that the parties submit. Id. at 2.

5

headquarters were still in Park Ridge, New Jersey on the date he filed the Complaint, the forum selection clause necessitates that this case proceed in this District. Id. at 6-9.

Next, Plaintiff claims that the private interest factors under 28 U.S.C. § 1404(a) require denial of Defendant's motion to transfer because: (i) this dispute arose in New Jersey, and not in Maryland, since Hertz likely developed, reviewed, and approved the Terms and Conditions in this state; (ii) New Jersey is the more convenient forum for the parties because Hertz maintained its principal place of business there for over twenty-five years; and (iii) litigating in this District will not inconvenience witnesses. See id. at 9-12; see also Abbey Decl., at Exh. 3-5, Aug. 3, 2015, D.E. 18. Lastly, Plaintiff contends that the Court need not transfer this case to Maryland because New Jersey maintains strong public and local interests in enforcing forum selection clauses that parties negotiate in this state. See Pl.'s Opp'n Br., at 11-13, Aug. 3, 2015, D.E. 17.

**IV.    DISCUSSION**

Title 28, Section 1404(a) of the United States Code provides that for the "convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) exists to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Ricoh Co. v. Honeywell, Inc., 817 F. Supp. 473, 479 (D.N.J. 1993) (internal citations and quotations omitted). The Third Circuit has recognized that the moving party bears the burden of establishing the need for transferring the case "with any affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary elements for a transfer under 28 U.S.C. § 1404(a)." Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756–57 (3d Cir. 1973). When determining the proper

venue for a class action, "courts are to look only at the allegations pertaining to the named representatives." Tahir v. Avis Budget Grp., Inc., No. 09-3495, 2009 WL 4911941, at *5 (D.N.J. Dec. 14, 2009).

The United States Supreme Court has instructed that if a contract contains a valid forum selection clause, then courts must "transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Texas, 134 S. Ct. 568, 575 (2013) ("Although a forum-selection clause does not render venue in a court 'wrong' or 'improper' under § 1406(a) or Rule 12(b)(3), the clause may be enforced through a motion to transfer under § 1404(a)"). For this reason, according to the Supreme Court, an enforceable forum selection clause can provide the basis for proper venue. Id. at 581 ("[Because] the overarching consideration under § 1404(a) is whether a transfer would promote 'the interest of justice,' a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'") (citations omitted).

The Third Circuit has ruled that a forum selection clause can apply to tangential claims that arise out of the parties' contractual relationship. See Crescent Int'l., Inc. v. Avatar Communities, Inc., 857 F.2d 943, 944 (3d Cir.1988) ("[P]leading alternate non-contractual theories is not alone enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms."); John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp., 119 F.3d 1070, 1074 (3d Cir. 1997) (concluding that forum selection clause broadly applied to all of the parties' disputes because clause stated that "English Courts shall have exclusive jurisdiction in relation to any dispute arising under [the parties' agreement]"); see also Kowalski v. YellowPages.com, LLC, No. 09-2382, 2010 WL 3323749, at *6 (D.N.J. Aug. 18, 2010) (concluding forum selection clause also applied to Plaintiff's tort claim because it alleged

that Defendant engaged "in fraud and misrepresentation during the initial formation of the advertising contract [at issue]."). However, courts will "not enforce a forum selection clause when the subject of the dispute does not arise from the contract containing the clause." Jayson Co. v. Vertical Market Software, No. 05-3883, 2006 WL 1374039, at *4 (D.N.J. May 18, 2006).

Federal law governs the enforceability of a forum selection clause in a diversity case like the one here. See Cadapult Graphic Systems, Inc. v. Tektronix, Inc., 98 F. Supp. 2d 560, 563 (D.N.J. 2000). A forum selection clause is unenforceable only if a party establishes: "(1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." Ramada Worldwide Inc. v. SB Hotel Mgmt. Inc., No. 14-2186, 2015 WL 758536, at *3 (D.N.J. Feb. 23, 2015) (citations omitted). Accordingly, courts enforce forum selection clauses "unless the resisting party makes a strong showing that the clause is unenforceable." Cadapult, 98 F. Supp. 2d at 564 (citations and quotations omitted). Thus, the Court must first resolve the applicability of the Forum Selection Clause found in Hertz's Terms and Conditions.

### A. FORUM SELECTION CLAUSE

When construing a forum selection clause, the court looks "to the text of the contract to determine whether it unambiguously states the parties' intentions." John Wyeth, 119 F.3d at 1074 ("To be 'unambiguous,' a contract clause must be reasonably capable of only one construction.") (citations omitted).

In Jayson, the court refused to apply a forum selection clause found in the parties' licensing agreement because the breach of contract claim at issue arose from "the agreements between the parties for modifications to [defendant's] standard software and none of [plaintiff's]

8

allegations rely on the License Agreement." Id. at *5. The court reasoned that the license agreement applied to plaintiff's "use" of the software, and that the agreement defined software as programs "contained in [a] sealed package." Id. Thus, the forum selection clause did not apply because: (i) plaintiff opened the package containing defendant's software, and (ii) plaintiff was not "asserting use or possession rights" under the licensing agreement. See id.

In Parts Geek, LLC v. U.S. Auto Parts Network, Inc., the court found a forum selection clause applied to the claims at issue. See No. 09–5578, 2010 WL 1381005, at *6-7, (D.N.J. Apr. 1, 2010). There, the parties executed an Adwords Contract, which provided terms for plaintiff's participation in defendant's "Adwords program." Id. at *3. That contract specified that all claims "arising out of or relating to this agreement or [defendant's] programs shall be litigated exclusively in the federal or state courts of Santa Clara County California[.]" Id. The court rejected defendant's argument that the clause applied only to disputes involving a customer's specific participation in the Adwords program because: (i) the terms defendant cited were just "introductory language" on which all customers needed to agree to participate in defendant's Adwords Program, and (ii) the forum selection clause stated that it applied to defendant's advertising program, which was at issue in the case. See id. at *6-7.

The forum selection clause at issue here contained two provisions. See Terms and Conditions, Tortorella Cert., Ex. A, at 8. The first provision, on which Defendant relies, stated that substantive law and jurisdiction of where a "rental commences" would apply to any "Program rental." Id. The Rental Agreement explained that for a "rental to be a rental using the [Gold] Program, [the customer] must be enrolled to use the Program in the country in which the rental is to commence." Id. The Rental Agreement, which consisted of the Rental Record and the Terms and Conditions, applied to all Gold Program rentals. Rentals that were not part of the

Gold Program, however, were "governed by the Terms and Conditions for rentals at the facility at which the rental originates[.]" Id.

The second provision, on which Plaintiff relies, provided that the jurisdiction and substantive law of the location where Hertz had its principal executive office would govern all disputes regarding a customer's "[e]nrollment or membership in the [Gold] Program." Id.

Having reviewed the record, the Court concludes, first, that the forum selection clause is not unduly ambiguous. To the contrary, the plain language makes clear that disputes arising from a rental, regardless of whether the customer was enrolled in any program, would be subject to the jurisdiction and laws of the state where the rental commenced. The language also makes clear that disputes arising from participation in a Hertz program, such as the Gold Program, would be subject to the laws and jurisdiction where Hertz maintained its principal executive office. In short, the forum selection clause compartmentalizes rental-related disputes and program-membership disputes. Although one might wonder why the forum selection clause distinguishes between these two types of disputes for jurisdiction and choice-of-law purposes, that issue is not before the Court.

The Court next concludes that the dispute here is about the fees that Hertz can lawfully charge a renter who damages a vehicle during the rental, and therefore that the first provision of the forum selection clause applies here. See Parts Geek, 2010 WL 1381005, at *5-7. First, unlike Jayson, the first provision of the forum selection clause here bears directly on the Plaintiff's claims. See Jayson, 2006 WL 1374039, at *3-6.

The Complaint itself makes clear that this action is about the Rental Fees, regardless of membership in the Gold Program. There is no dispute that Plaintiff was a Gold Program member when he rented a car from Defendant. See Compl. at ¶ 10; see also Rental Record,

10

Tortorella Cert., Ex. B. But the Complaint does not limit the class action to Gold Program members. The Complaint states that "Plaintiff and the class he seeks to represent are all renters of vehicles from Hertz, whom Hertz has improperly and illegally imposed [the Rental Fees]." Compl. at ¶ 1. The Complaint defines the class in this case as "[a]ll persons in the United States who rented a vehicle from Hertz within the period beginning six (6) years before this complaint was filed through the present, and who were charged [the Rental Fees] for damage and/or loss occurring to a Hertz rental car." Id. at ¶ 44 (emphasis added). The Complaint thus indicates that this case is about improper fees that Hertz allegedly charged customers, regardless of their membership in the Gold Program.

For these reasons, the Court finds that the first provision of the Clause, which concerns "any Program rental" applies in this matter. Plaintiff has not argued, and the Court does not conclude, that the Clause is unenforceable because of fraud or otherwise. Therefore, the Court finds that the Clause is valid, and that Maryland is the proper venue for this dispute. See, e.g., John Wyeth, 119 F.3d at 1074-76.

### B. TRANSFER

The Court now turns to the transfer analysis under 28 U.S.C. § 1404(a). Transfer is appropriate under Section 1404(a) if the defendant satisfies two factors: (i) that venue is proper in the transferee district, and (ii) that the transferee district can exercise personal jurisdiction over all parties. See Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970).

In all civil cases, 28 U.S.C. § 1391 determines proper venue. Under § 1391(b), a party may file a civil action in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State,[3]

---

[3] Defendant is incorporated in Delaware but maintains its principal place of business in Florida. See Compl. at ¶ 6; see also McGinley Decl. at ¶¶ 1-4. Section 1391(b)(1), therefore, cannot confer venue

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or

(3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.[4]

The Court concludes that venue is proper in the transferee district because "a substantial part of the events or omissions giving rise" to Plaintiff's claim occurred in Maryland. 28 U.S.C. § 1391(2). The Third Circuit has emphasized that events or omissions supporting a claim must be "substantial," and that events or omissions with only "some tangential connection with the dispute in litigation are not enough." Cottman Trans. Sys., Inc., v. Martino, 26 F.3d 291, 294 (3d Cir. 1994). To assess "whether events or omissions giving rise to the claims are substantial, it is necessary to look at the nature of the dispute." Id. at 295. Traditionally, when considering if "venue for a putative class action is proper, courts are to look only at the allegations pertaining to the named representatives." Tahir v. Avis Budget Grp., Inc., No. 09-3495, 2009 WL 4911941, at *5 (D.N.J. Dec. 14, 2009) (citations and quotations omitted).

A review of the record indicates that Plaintiff's rental of a Hertz car in Maryland set in motion the key events of this case. See McNulty v. J.H. Miles & Co., 913 F. Supp. 2d 112, 118 (D.N.J. 2012) (transferring breach of contract claim where the performance and alleged breach of the parties' contract occurred outside of New Jersey) ("With respect to a breach of contract claim, the Court must consider several specific factors that relate to where the claim arose,

---

since Defendant resides in more than one state. See 28 U.S.C. § 1391(c)(2) (explaining that corporate defendant maintains residency for the purposes of venue "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question.").

[4] Section 1391(b)(3) does not apply because the Court finds, for the reasons set forth above, that this action may continue in the District of Maryland.

including (1) where the contract was negotiated or executed; (2) where the contract was to be performed; and (3) where the alleged breach occurred."). Indeed, Plaintiff suffered the automobile accident in Maryland, and incurred the Rental Fees, only after he had rented the vehicle from Hertz at the BWI location in Maryland. See Compl. at ¶ 17; see also Vehicle Incident Report, Totorella Cert., Ex. C; McGinley Decl. at ¶ 5. By the express language of the Terms and Conditions, the parties executed the Rental Agreement in Maryland because, under the Terms and Conditions, the Rental Agreement is executed when a customer obtains possession of the rental car. See Terms and Conditions, Tortorella Cert., Ex. A, at 7. The parties do not dispute that Plaintiff rented, and therefore took possession of, Hertz's rental car in Maryland. Likewise, the breach of the Rental Agreement, if any, occurred in Maryland and not in New Jersey. Thus, venue is proper in Maryland.[5]

The District of Maryland, furthermore, can exercise personal jurisdiction over the parties by virtue of them having entered into the forum selection clause. Moreover, Maryland law allows personal jurisdiction if the claim arises from the defendant transacting business there. See Md. Cts. & Jud. Proc. § 6-103(b)(1). That standard is consistent with the traditional test to

---

[5] In its opposition, Plaintiff claims that Hertz likely negotiated and executed the Rental Agreement in New Jersey because Hertz maintained its corporate headquarters in New Jersey "when the contract was breached." Pl.'s Opp'n Br., at 10, Aug. 3, 2015, D.E. 17. Plaintiff further claims that he executed the Rental Agreement in his home state of Alabama, while Defendant likely executed the Agreement from its former New Jersey corporate headquarters. See id. at 4-5.

Plaintiff's argument runs contrary to the language in the Terms and Conditions. See Terms and Conditions, Tortorella Cert., Ex. A, at 7. Second, Plaintiff has not submitted evidence to establish that Hertz's principal place of business was in New Jersey when he filed the Complaint on April 6, 2015. The Hertz press release on which Plaintiff relies indicates that Hertz had moved from Park Ridge, New Jersey to Florida before Plaintiff filed the Complaint on May 7, 2013. See Hertz Press Release, Abbey Decl., Ex. 3. That is significant because Plaintiff's car accident occurred in Maryland on July 5, 2013. See Vehicle Incident Report, Tortorella Cert., Ex. C. Nor does the Hertz corporate disclosure Plaintiff submitted establish that Defendant's move to Florida occurred before the Complaint's filing date. In any event, for the reasons set forth above, the Court concludes that the material acts and omissions relevant to this class action occurred primarily in Maryland and not in New Jersey.

determine whether a court may exercise specific personal jurisdiction, which entails a three-factor test: (i) the defendant must have "purposefully directed" its activities at the forum state; (ii) the plaintiff's claim must "arise out of or relate to" at least one of the defendant's specifically directed activities in the forum state; and (iii) the courts may analyze other factors "to ensure that the assertion of jurisdiction otherwise "comport[s] with fair play and substantial justice" and is "reasonable." Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007).

Here, Defendant "purposefully directed" business activities in Maryland by renting vehicles at its BWI location, including to Plaintiff. Moreover, because the Court concluded that the Clause's first provision applies, it is clear that the transferee district may exercise personal jurisdiction. See Howard Johnson Int'l, Inc. v. DKS, LLC, No. 08-2316, 2009 WL 2595685, at *3 (D.N.J. Aug. 20, 2009) ("Personal jurisdiction, however, is a right that can be waived by the parties. A forum selection clause in a contract is one way to effectuate this waiver.").

## C. SECTION 1404(A) TRANSFER FACTORS

Having determined that venue in Maryland is proper, the Court must now analyze a series of private and public factors to determine whether "on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). The "private interest" factors include: (i) plaintiff's choice of forum; (ii) defendant's preference; (iii) where the claim arose; (iv) the convenience of the parties as indicated by their relative physical and financial condition; (v) the convenience of the witnesses; and (vi) the location of books and records. See id. at 879. The "public interests" factors include: (i) the enforceability of the judgment; (ii) practical considerations that could make the trial easy, expeditious, or inexpensive; (iii) the relative administrative difficulty arising from court congestion; (iv) the local interest in deciding

14

local controversies at home; (v) the public policies of the fora; and (vi) the familiarity of the trial judge with the applicable law. See id. at 879-80. The Court's conclusion that the Clause's first provision applies, however, changes the traditional transfer analysis in three ways: (i) plaintiff's choice of venue in this District "merits no weight[;]" (ii) the Court need not consider "arguments about the parties' private interests[,]" which means the Court "may consider arguments about public-interest factors only[;]" and (iii) a transfer of venue under § 1404(a) "will not carry with it the original venue's choice-of-law rules[.]" Atl. Marine, 134 S. Ct. 568, 581-82 (2013).

After considering the public interest factors in dispute, the Court concludes that on balance transfer to the District of Maryland is appropriate and in the interests of justice.[6] First, the third public interest factor is neutral in the Court's consideration because any difference in the time to disposition of cases between the two districts is insignificant. See Def.'s Mot. to Transfer, at 15, June 26, 2015, D.E. 11-1 (citing federal court statistics showing that Maryland civil cases proceed to trial 2.7 months faster than New Jersey civil cases). Second, the Court finds that Maryland has a strong local interest in this matter. See Cancer Genetics, Inc. v. Kreatech Biotechnology, B.V., No. 07-273, 2007 WL 4365328, at *6 (D.N.J. Dec. 11, 2007) (finding New Jersey lacked any local interest because the parties' forum selection clause required the case to proceed in New York) ("Typically, when a substantial amount of the alleged culpable conduct occurred in the chosen forum, that court favors retaining jurisdiction as a matter of local interest."). Again, Plaintiff incurred the Rental Fees at issue here because he rented a car from Hertz, and later damaged that car in an accident, all of which occurred in Maryland. As a result, New Jersey has little, if any, local interest in this matter.

---

[6] The parties only dispute public interest factors 4-6. See generally Def.'s Mot. to Transfer, June 26, 2015, D.E. 11-1; Pl.'s Opp'n Br., Aug. 3, 2015, D.E. 17; Def.'s Reply Br., Aug. 17, 2015, D.E. 22.

Third, New Jersey's public policy of upholding valid forum selection clauses weighs in favor of transferring this matter to Maryland. See, e.g., Cadapult, 98 F. Supp. 2d at 568 (granting transfer under 28 U.S.C. § 1404(a) to Oregon in light of parties' valid forum selection clause). Finally, the sixth public interest factor weighs in favor of transfer because "justice requires that, whenever possible, a diversity case should be decided by the court most familiar with the applicable state law." Czajkowski v. Peal, No. 14-3803, 2015 WL 1914605, at *8 (D.N.J. Apr. 27, 2015). Under the Clause's first provision, Maryland law governs this dispute.

## V. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's motion to transfer this matter to the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1404(a). An appropriate Order accompanies this Opinion.

*s/ Michael A. Hammer*
**UNITED STATES MAGISTRATE JUDGE**

Dated: October 26, 2015