IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT SPOTSWOOD                  *
                                  *
                                  *
v.                                *  Civil Action No. WMN-16-1200
                                  *
THE HERTZ CORPORATION             *
                                  *
*  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

## MEMORANDUM AND ORDER

Before the Court is a Motion to Dismiss filed by Defendant The Hertz Corporation (Defendant or Hertz). ECF No. 50. The motion is ripe. Upon a review of the briefs submitted and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that the Motion to Dismiss will be granted in part and denied in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff brought this action challenging certain charges that Defendant assessed against him after the car he had rented from Defendant was damaged in a minor accident. Plaintiff, a resident of Alabama, rented a car from Defendant at the Baltimore Washington International Airport on July 3, 2013. Plaintiff is a member of Defendant's Gold Plus Rewards Program and when he enrolled in that program he agreed to certain terms and conditions that would govern future rentals. Those terms and conditions were set out in a 40-plus page Rental Terms

Agreement booklet (Agreement).  First Amended Compl. (FAC) ¶ 11;
see also ECF No. 16-2 (the Agreement).  When he rented the car
on July 3, 2013, he also agreed to certain additional terms
specific to this rental that were set out in a "Rental Record."
FAC ¶ 11; see also ECF No. 10-2 at 71-74 (Rental Record).  It is
undisputed that these two documents form the entire contract
between Plaintiff and Defendant regarding the subject rental.

The Agreement provides that the renter of the vehicle is
"responsible for any and all loss of or damage to the car
resulting from any cause including but not limited to collision,
rollover, theft, vandalism, seizure, fire, flood, hail or other
acts of nature or God regardless of fault."  Agreement § 4(a).[1]
The Agreement provides further that the renter's "responsibility
will not exceed the greater of the retail fair market value of
the car and its manufacturer buyback program value at the time
the car is lost or damaged, less its salvage value, plus actual
towing, storage and impound fees, an administrative charge and a
reasonable charge for loss of use."  Id. § 4(b).  The Agreement
also permits Defendant to charge the renter's "credit, charge or
debit card for these losses, costs and charges, together with
any other applicable charges, at or following the completion of
the rental."  Id.

---

[1] Much of the Agreement is printed in all-capitalized, bold text.
For purposes of readability, the Court omits the capitalization
and bold print throughout this Memorandum.

On July 5, 2013, Plaintiff was involved in a minor parking lot accident which resulted in some minor damage to Defendant's vehicle.  Defendant assessed the following charges related to this accident:

Repairs to the vehicle: $662.90

Administration[2] Fees: $85.39

Loss of Use: $362.94

Diminishment of Value Fees: $111.80

FAC ¶ 20.  Because Plaintiff had declined Defendant's loss damage insurance, the claim for this accident was submitted to American Express which provided car rental insurance through Plaintiff's credit card program.  American Express agreed to pay and has paid for all of the Repairs and for one half of the Loss of Use, but has declined payment for the Administrative or Diminishment of Value Fees.  Defendant takes the position that Plaintiff is responsible for the fees unpaid by American Express, which amount to $378.66.  Id. ¶ 22.

Plaintiff initially filed this suit as a putative class action in the Superior Court of New Jersey, Bergen County, on April 6, 2015.  Defendant removed this action to the United States District Court for the District of New Jersey and then

---

[2] The parties have tended to use the terms "Administration" and "Administrative" interchangeably.  Except when quoting one of the parties, the Court will use the term "Administrative" the term actually contained in the Agreement.

filed a motion to have the case transferred to this Court.  That motion was granted on October 27, 2015.  After the case arrived in this Court, Defendant filed a motion to dismiss some of the claims asserted against it in the Complaint.  ECF No. 42. Defendant also filed a motion to stay the time for filing an answer to the claims that were not the subject of its motion to dismiss.  ECF No. 41.  Shortly thereafter, Plaintiff filed a First Amended Complaint, ECF No. 48, rendering Defendant's two previous motions moot.

In his First Amended Complaint, as he did in his original Complaint, Plaintiff challenges the Loss of Use, Administrative, and Diminishment of Value fees.  He observes that nowhere in the Agreement is there an expressed allowance for any Diminishment of Value fee.  While acknowledging that the Agreement permits the assessment of Loss of Use and Administrative fees, he contends that those fees must be reasonably related to actual costs incurred by Defendant.  He asserts that they are not so related, but, instead, are simply a means by which Defendant creates additional profit.

Based upon these allegations, Plaintiff brings the following claims in the First Amended Complaint: Count I (Breach of Contract), Count II (Violations of the Maryland Consumer Protection Act), Count III (Injunctive Relief), Count IV (Injunctive Relief Pursuant to Common Law), Count V (Unjust

4

Enrichment), and Count VI (Negligent Misrepresentation). Plaintiff proposes a class consisting of all persons and entities that have rented vehicles from Defendants in the 6 years prior to the original filing of this action and who were charged a Diminishment of Value fee, a Loss of Use fee, and/or an Administrative fee for damage and/or loss by Defendant.  As a subclass, Plaintiff proposes a similarly defined group of persons and entities who rented their vehicles in Maryland.

Unlike the motion to dismiss the original Complaint which did not challenge Plaintiff's breach of contract claim, the instant motion seeks to dismiss the First Amended Complaint in its entirety.  Briefly stated, Defendant argues that there was no breach of contract because both the Agreement and Maryland common law permit the recovery of these challenged fees.  For the same reasons, Defendant argues that the Maryland Consumer Protection Act (MCPA) claim fails because the challenged fees were fully disclosed.  As for the unjust enrichment and negligent misrepresentation claims, Defendant asserts that those claims should be dismissed because these tort claims cannot be brought where the parties' relationship is governed by a contract.  Finally Defendant suggests that claims for injunctive relief asserted in Counts III and IV should be dismissed because injunctive relief is a remedy and not an independent cause of

action.   As to that last argument, Plaintiff concedes that

Counts III and IV should be withdrawn as separate counts.

## II. LEGAL STANDARD

A complaint must contain "sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible

on its face.'"   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

(2007)).   Facial plausibility exists "when the plaintiff pleads

factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct

alleged."   Iqbal, 556 U.S. at 678.   "Factual allegations must be

enough to raise a right to relief above the speculative level."

Twombly, 550 U.S. at 555.   Although when considering a motion to

dismiss a court must accept as true all factual allegations in

the complaint, this principle does not apply to legal

conclusions couched as factual allegations.   Id.

## III. DISCUSSION

### A. Breach of Contract

In moving to dismiss the breach of contract claim,

Defendant takes the position that each of the three challenged

charges are explicitly or implicitly permitted under the terms

of the Agreement and, even if not permitted under the Agreement,

are permitted under Maryland common law.   The Court would agree

that these categories of charges are permissible.   Where the

6

Court would take issue with Defendant is its apparent position that these charges do not need to be at least reasonably related to any actual costs caused by the damage to the vehicle.

Throughout its motion and reply, Defendant asserts that the only limitation to the charges assessed against its customers is the "formula" set out in Section 4(b) of the Agreement.  ECF No. 50-1 at 11-12; see also id. at 7 (arguing that Section 4(a)'s "broad assignment of liability to the renter in the event of damage or loss . . . is limited only by a cap on the total potential monetary liability, as determined by the formula set forth in Section 4(b); ECF No. 53 at 3 (repeating that the renter's "responsibility for any and all loss or damage is limited only by Section 4(b), which sets forth a formula by which plaintiff's maximum financial responsibility is to be determined."); id. at 10 (repeating again that the renter's "liability would be capped only by the formula set forth in Section 4(b)").  The "formula" to which Defendant repeatedly harkens back, however, is nothing more than the list of the categories of charges that Defendant asserts it can charge.[3]  The

_____

[3] In its Reply, Defendant reiterates the "formula" as follows:

> That formula starts with identifying the greater of "the retail fair market value of the car" and the car's "manufacturer buyback program value at the time the car is lost or damaged," id., "less [the car's] salvage value," id.  Once that amount is determined, Section 4(b) provides that the maximum financial

"formula" gives no indication as to the dollar amount of those charges or how those charges might be calculated.[4]  This "formula" also encompasses a catch-all inclusion of undefined "other applicable charges."

The Agreement's failure to provide any meaningful notice of potential charges is perhaps best illustrated by Defendant's argument in support of its assessment of an Administrative Fee of $85.39.  In its argument, Defendant relies on <u>Sallee v. Dollar Thrifty Automotive Group, Inc.</u>, Civ. No. 14-250, 2015 WL 1281518 (N.D. Okla. Mar. 20, 2015), a case about which Defendant asserts the "plaintiffs made almost exactly the same allegation as plaintiff does here."  ECF No. 50-1 at 8.  The Court finds that <u>Sallee</u> actually undermines more than supports Defendant's position.

In <u>Sallee</u>, the car rental agreement provided that, if a customer opted out of the rental company's pre-paid tolling service but used a toll road that did not have booths for cash payments, the customer would be assessed "an administrative fee

---

responsibility is increased to include the amount of the car's "actual towing, storage and impound fees, an administrative charge and a reasonable charge for loss of use."  <u>Id.</u>  Section 4(b) goes on to authorize Hertz to charge plaintiff's credit card for this amount, "together with any other applicable charges."  <u>Id.</u>

[4] The charge for "loss of use" is, at least, limited to a "reasonable charge."  Agreement § 4(b).

of $15 [] per occurrence in addition to any toll charges the renter incurs." Id. at *1.  The plaintiffs declined the pre-paid tolling service and, while using the rental car, took a toll road and incurred four tolls totaling $4.70 in charges. The rental company then informed the plaintiffs that it was assessing a $15 fee for each of the four toll violations, resulting in a total obligation of $64.70.  Id.

In granting the defendant's motion to dismiss the plaintiffs' breach of contract claim, the court noted that "Plaintiffs in this case rejected the toll by-pass option and agreed to the terms of the toll fee provision which was clearly disclosed and explained in the rental agreement.  Plaintiffs recognize they were charged precisely the amount they agreed to under the contract.  Id. at *6 (emphasis added).  In reaching this conclusion, the court relied on Ramon v. Budget Rent-A-Car System, Inc., Civ. No. 06-1905, 2007 WL 604795 (D.N.J. Feb. 20, 2007), a case arising out of a challenge to a rental car company's refueling fee.  In dismissing the breach of contract claim in that action, the court noted that the plaintiff "[n]ot only rejected the prepaid fuel option but agreed to the terms of the refueling service charge, an avoidable fee . . . which was clearly identified and explained in the agreement.  Ultimately, Plaintiff was charged the precise amount he agreed to under the

contract . . . .  The Court fails to see how this could possibly amount to a breach."  Id. at *4 (emphasis added).

The facts in Sallee and Ramon are significantly different than the allegations here.  While the Agreement indicates that Defendant can assess an administrative charge, unlike the contracts in Sallee and Ramon, it provides no notice, whatsoever, as to what that administrative charge would be or how it would be calculated.  In Defendant's view, the Agreement would permit Defendant, once a vehicle was damaged, to assess any amount it wishes as an Administrative fee.

Defendant notes that, unlike some of the other charges that are permitted under the Agreement, i.e., "the actual towing, storage and impound fees," the Agreement does not demand that Defendant calculate and charge the "actual" administrative fees incurred.  ECF No. 50-1 at 9.  Defendant posits that the effort expended to calculate actual administrative fees for each individual loss or damaged vehicle would only magnify the costs to Defendant and therefore the fees that it would then charge customers.  The Court is not holding, and does not read the First Amended Complaint as necessarily asserting, that Defendant must calculate and charge the actual administrative costs incurred each and every time a vehicle is damaged.  While Plaintiff suggests that a flat fee applied to every loss or damage to a vehicle, regardless of the degree of damage,

indicates that the fee is not supported by any "actual administrative costs," FAC ¶¶ 28, 29, Plaintiff also avers simply that "the Administrative Charge must be reasonable under the law." FAC ¶ 17. The Court finds that Plaintiff's allegation that the fee is not reasonably related to actual costs is sufficient at the motion to dismiss stage to establish a viable breach of contract claim.

As to Defendant's assessment of a Loss of Use fee, the Court agrees that the Agreement entitles Defendant to a "reasonable" reimbursement for loss of use but also concludes that the determination as to whether $362.94 is a reasonable figure for that loss is a determination that cannot be made at the motion to dismiss stage. The only Maryland decision cited by Defendant in support of its assertion of this charge is Taylor v. King, 213 A.2d 504 (Md. 1965). In Taylor, which involved damage to an individual's personal vehicle, the Maryland Court of Appeals noted that "the measure of damages may include a reasonable allowance for loss of use of the vehicle," id., but said nothing as to how that reasonable amount might be calculated. Taylor also does not address the matter at issue here, i.e., whether loss of use damages can be recovered where the owner of the vehicle may have suffered no actual harm during the deprivation.

In a footnote, Defendant cites some cases from other jurisdictions that arguably support the assessment of loss of use charges without proof of financial loss.  ECF No. 50-1 at 11 n.4.  Most of those cases involve the temporary loss of a single vehicle (car, airplane, forklift, or luxury yacht) that was not a part a fleet of similar or fungible vehicles.  The one case that addresses damage to a vehicle in a fleet of vehicles, Koenig v. PurCo Fleet Services, Inc., 285 P.3d 979 (Colo. 2012), construed a contract with language materially different than the language of the Agreement here.  In Koenig, the car rental agreement stated that, in case of damage to the rented vehicle, the renter would be responsible for "loss of use (regardless of fleet utilization)."  Id. at 980.  The court opined,

> [w]e interpret the contractual language at issue in this case — holding Koenig responsible for loss of use damages "regardless of fleet utilization" — to mean that PurCo is entitled to recover loss of use damages regardless of whether National would have rented out the vehicle Koenig damaged or any vehicle in its fleet during the period of repair.  Said differently, PurCo is entitled to recover loss of use damages irrespective of its actual lost profits.  Thus, the contract language allowing PurCo to recover "loss of use [damages] (regardless of fleet utilization)" entitles it to reasonable rental value of a substitute vehicle.

Id.

A more recent decision from the United States District Court for the Eastern District of Pennsylvania, Humphreys v. Budget Rent A Car Systems, Inc., relied on similar language when

holding that loss of use charges could be assessed by the rental car company.  Civ. No. 10-1302, 2014 WL 1608391, at *1 (E.D. Pa. Apr. 22, 2014).  In Humphreys, "the rental document provided that the renter is responsible to pay for the loss-of-use of the car, without regard to utilization."  Id.  Even with that language in the rental agreement, the court denied the motion to dismiss a breach of the covenant of good faith and fair dealing after noting that the "loss of use provisions of the contract . . . do not expressly indicate how the loss of use is calculated."  Id. at *8.  See also, Benson v. Budget Rent A Car Sys. Inc., Civ. No. 08-4512, 2011 WL 4528334, at *6 (E.D. Pa. Sept 29, 2011) (denying car rental company's motion for summary judgment where the contract included "without regard to our fleet utilization," language but also noting that the "contract does not disclose the formula to the consumer" for determining loss of use damages).

Here, there is no similar "regardless of fleet utilization" language in the Agreement.  In the absence of that language it is ambiguous, at best, in this Court's view as to whether the Agreement, as written, permits loss of use recovery without a showing of financial loss.  Furthermore, the lack of any explanation as to how loss of use damages would be calculated adds additional ambiguity.

As to the third category of challenged charges, Diminishment of Value fees, the Court again agrees that this is a category of charges that can be recovered, both under the Agreement and under Maryland common law.  The provision for "other applicable charges" in the Agreement could reasonably be read to encompass such charges.  Furthermore, in Fred Frederick Motors, Inc. v. Krause, the decision on which Defendant relies, the Maryland Court of Appeals held that if, after being repaired, "the vehicle looked and operated substantially the same after the accident but its market value had been diminished by the fact of being in an accident, then to be adequately compensated, the injured party must receive, in addition to the cost of repairs, the diminution in market value stemming from the injury."  277 A.2d 464, 465 (Md. 1971).

Like the other challenged charges, however, this charge must be reasonably related to actual harm suffered.  In Fred Frederick Motors, the court held that "if the plaintiff can prove that after repairs his vehicle has a diminished market value from being injured, then he can recover in addition to the cost of repairs the diminution in market value."  Id. at 467 (emphasis added).  Here, Defendant provides no explanation as to why it believes the market value of the repaired vehicle was $111.80 less than its market value before the accident.

In moving to dismiss, Defendant takes the position that, because each challenged category of charges is explicitly or implicitly permitted under the Agreement, resolution of the breach of contract claim is appropriate at this stage of the proceedings.  Defendant posits, "'"[i]n general, the interpretation of a written contract is a question of law."  As such, contract interpretation is an appropriate question to be resolved in a motion to dismiss.'"  ECF No. 53 at 2 (quoting Pyott-Boone Elecs. Inc. v. IRR Trust for Donald L. Fetterolf Dated Dec. 9, 1997, 918 F. Supp. 2d 532, 537 (W.D. Va. 2013), quoting Homeland Training Ctr., LLC v. Summit Point Auto. Research Ctr., 594 F.3d 285, 290 (4th Cir. 2010)).

The application of that general rule, however, is only appropriate if a contract is clear and unambiguous.  "[I]n the context of a motion to dismiss, the construction of an ambiguous contract "'is a question of fact which, if disputed, is not susceptible of resolution under a motion to dismiss for failure to state a claim.'"  Chartier v. M. Richard Epps, P.C., Civ. No. 14-1701, 2014 WL 4748629, at *13 (quoting Horlick v. Capital Women's Care, LLC, 896 F. Supp. 2d 378, 394 (D. Md. 2011)). "At the pleading stage, if a contract is found to be ambiguous, a defendant's motion to dismiss must be denied." View Point Med. Sys., LLC v. Athena Health, Inc., 9 F. Supp. 3d 588, 600 (D. Md. 2014).

A "contract is ambiguous if it is subject to more than one interpretation when read by a reasonably prudent person." Sy-Lene of Washington v. Starwood Urban Retail II, LLC, 829 A.2d 540, 547 (Md. 2003).  To determine whether a contract is ambiguous, a court considers "the character of the contract, its purpose, and the facts and circumstances of the parties at the time" that they enter into the contract.  Pacific Indem. Co. v. Interstate Fire & Cas. Co., 488 A.2d 486, 488 (Md. 1985).  For the reasons stated above, the Court finds sufficient ambiguity in the Agreement to render inappropriate the dismissal of the breach of contract claim.

The Court notes that the parties have also argued as to whether the Agreement is unconscionable.  While resolving that issue is not necessary to resolve the pending motion, the issue warrants a brief discussion.  In his Opposition, Plaintiff contends that the Agreement is an adhesion contract and, as such, it is procedurally and substantively unconscionable.  ECF No. 52 at 9-10.  Defendant counters that Plaintiff's unconscionability argument is premised on new allegations, not contained in the First Amended Complaint and, therefore, is an argument that cannot be asserted for the first time in Plaintiff's Opposition.  ECF No. 53 at 7.  The Court, however, finds that there were sufficient allegations in the First

16

Amended Complaint to permit Plaintiff to at least raise the
argument.

Plaintiff asserts that "[a]s a matter of course, Hertz
requires its car rental customers to execute standardized Rental
Agreements that it drafts which expressly provide terms of the
rental, expressly provide permissible charges, and expressly
provide the conditions of the rental." FAC ¶ 35. Plaintiff
asserts further that Defendant "alone was in a position to fully
describe and set out the fees. Neither [Plaintiff] nor the
Class were or are in a position to amend the terms, strike out
the terms, add terms, or clarify the terms of the form
agreement." Id. ¶ 39. These allegations arguably characterize
the Agreement as a contract of adhesion, i.e., "an agreement
'that is drafted unilaterally by the dominant party and then
presented on a "take-it-or-leave-it" basis to the weaker party
who has no real opportunity to bargain about its terms.'" Mould
v. NJG Food Service Inc., 986 F. Supp. 2d 674, 678 (D. Md. Dec.
11, 2013) (quoting Walther v. Sovereign Bank, 872 A.2d 735, 746
(Md. 2005)).

While the allegations in the First Amended Complaint might
lead to the conclusion that the Agreement is a contract of
adhesion, for a contract to be unenforceable for
unconscionability, it must be both procedurally and
substantially unconscionable. Doyle v. Fin. Am., LLC, 918 A.2d

17

1266, 1274 (Md. Ct. Spec. App. 2007).  Substantively unconscionable terms are terms that are "unreasonably favorable to the more powerful party," "impair the integrity of the bargaining process or otherwise contravene the public interest or public policy," "attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law," or are otherwise "unreasonably and unexpectedly harsh."  Walther, 872 A.2d at 426.  If, the Agreement permits what Defendant apparently believes it permits – that Defendant is only limited by a "formula" that, in effect, poses no limits whatsoever on the charges assessed – the Agreement certainly borders on unconscionability.

### B. Maryland Consumer Protection Act Claim

The MCPA prohibits certain deceptive trade practices, including representations that "ha[ve] the capacity, tendency, or effect of deceiving or misleading consumers" and omissions of "material fact if the failure deceives or tends to deceive." Md. Code Ann., Com. Law § 13-301(1), (3).  "[M]aterial omissions occur where a significant number of unsophisticated consumers likely would not have made the disputed choice had the commercial entity not omitted the information in question." Bezmenova v. Ocwen Fin. Corp., Civ. No. 13-3, 2013 WL 1316445, at *4 (D. Md. Mar. 27, 2013).  For the reasons stated above, the

Court concludes that Plaintiff has adequately alleged that there were material omissions in the Agreement.

To state a claim under the MCPA, however, a plaintiff "must allege (1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes [him] actual injury." Bey v. Shapiro Brown & Alt, LLP, 997 F. Supp. 2d. 310, 318 (D. Md. 2014) (emphasis added). Where the unfair or deceptive practice is an omission, "a consumer relies on [that] material omission under the MCPA where it is substantially likely that the consumer would not have made the choice in question had the commercial entity disclosed the omitted information." Bank of America, N.A. v. Jill P. Mitchell Living Trust, 822 F. Supp. 2d 505, 535 (D. Md. 2011). Defendant correctly observes that Plaintiff has not alleged that kind of reliance in the First Amended Complaint.

In opposing the motion to dismiss, Plaintiff's only response on the issue of reliance is his proposition that "[t]he First Amended Complaint, when viewed as a whole, provide (sic) the allegations of Plaintiff's reliance on the Agreement as required by the [MCPA]." ECF No. 52 at 13. For that proposition, Plaintiff cites to paragraphs 99 to 120 of the First Amended Complaint which comprise Count VI, the count for negligent misrepresentation. The only reference to reliance in that portion of the First Amended Complaint (or anywhere in the

19

First Amended Complaint) is the following.  "Plaintiff has taken action in reliance on the [] Agreement and terms and conditions set forth therein.  Since the charges Defendant billed to Plaintiff are not included in the [] Agreement, Plaintiff did not pay those fees.  FAC ¶ 117.

The "reliance" at issue in Plaintiff's MCPA claim, however, is not related to his current decision to not pay these fees but, instead, goes to his decision to enter into the Agreement. To state a viable MCPA claim, Plaintiff would need to allege that had the omitted information regarding these challenged fees been included in the Agreement, he would have made a different choice and not rented a car from Defendant.  Plaintiff has not made that allegation in the First Amended Complaint and, accordingly, his MCPA claim will be dismissed.

### C. Tort Claims

Plaintiff has acknowledged that his breach of contract claim is the "primary dispute" in this action and all the other claims are related to that claim.  ECF No. 47 at 2.  In moving to dismiss the negligent misrepresentation and unjust enrichment claims, Defendant argues that Plaintiff cannot simply recast his breach of contract claims into tort claims.  The Court agrees.

Under Maryland law, as a general rule, "plaintiffs cannot recover in tort for . . . purely economic losses.  Such losses are often the result of some breach of contract and ordinarily

should be recovered in contract actions . . . ."   Morris v.
Osmose Wood Preserving, 667 A.2d 624, 631 (Md. 1995).   Plaintiff
notes that there is an exception to that rule, ECF No. 52 at 16
(citing Dwoskin v. Bank of America, N.A., 850 F. Supp. 2d 557,
569 (D. Md. 2012)), but does not explain how that exception
might be applicable to the case at bar.   To the contrary, the
referenced exception applies to "claims of fraudulent inducement
to contract" that are "independent of the contract."   Dwoskin,
850 F. Supp. 2d at 569.

There is nothing about Plaintiff's claims that are
independent of the Agreement.   In the sentence immediately
following Plaintiff's declaration of that independence, ECF No.
52 at 16, Plaintiff states, "Plaintiff's claims for negligent
misrepresentation are premised on the language of the
Agreement as it was drafted and presented to Plaintiff and Class
Members."   Id.   While Plaintiff then proceeds to reiterate his
arguments as to why the Agreement does not support the assessed
charged, his focus remains squarely within the term of the
contract.   Id. at 16-18.

Plaintiff's Unjust Enrichment claim fails for the same
reasons.   "In Maryland, a claim of unjust enrichment, which is a
quasi-contract claim, may not be brought where the
subject matter of the claim is covered by an express contract
between the parties."   Janusz v. Gilliam, 947 A.2d 560, 567 (Md.

21

2008) (internal quotations omitted).  There is an exception to that rule, similar to the exception for negligent misrepresentation claims, where there are allegations of fraud or bad faith in the formation of the contract.  Kwang Dong Pharm. Co. v. Han, 205 F. Supp. 2d 489, 497 (D. Md. 2002). Plaintiff has not so alleged.

Plaintiff's unjust enrichment claim fails for the additional reason that Plaintiff does not claim that he has paid the charges assessed against him.  To state a claim for unjust enrichment, there must be: (1) a benefit conferred upon the defendant by the plaintiff, (2) an appreciation or knowledge by the defendant of the benefit, and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.  Hill v. Cross Country Settlements, LLC, 936 A.2d 343, 352 (Md. 2007).  Here, because Plaintiff has declined to make the challenged payments to Defendant, there has been no benefit from Plaintiff conferred on or retained by Defendant, inequitably or otherwise.

## IV. CONCLUSION

For these reasons, Defendant's motion will be granted as to all but Plaintiff's breach of contract claim asserted in Count I of the First Amended Complaint.

Accordingly, it is this 22nd day of November, by the United States District Court for the District of Maryland, ORDERED:

(1) That Defendant's Motion to Stay Time for Filing an Answer, ECF No. 41, is DENIED as MOOT;

(2) That Defendant's Motion to Dismiss Complaint, ECF No. 42, is DENIED as MOOT;

(3) That Defendant's Motion to Dismiss First Amended Complaint, ECF No. 50, is GRANTED in part and DENIED in part in that the Motion is GRANTED as to Counts II through VI, but DENIED as to Count I; and

(4) That the Clerk of the Court shall transmit a copy of this Memorandum and Order to all counsel of Record.


_____/s/_____
William M. Nickerson
Senior United States District Judge