IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROBERT SPOTSWOOD,       *

     Plaintiff,         *

     v.              *

HERTZ CORPORATION,     *

     Defendant.      *

Civil Action No. RDB-16-1200

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

Plaintiff Robert Spotswood ("Plaintiff" or "Spotswood") brings this class action lawsuit against Defendant Hertz Corporation ("Defendant" or "Hertz"), alleging that Hertz improperly fined customers who damaged their Hertz rental vehicles. Currently pending is Plaintiff's Motion for Class Certification. (ECF No. 85.) The parties' submissions have been reviewed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons stated below, Plaintiff's Motion for Class Certification (ECF No. 85) is DENIED.

## BACKGROUND

### I.    Spotswood's Factual Allegations.

The allegations contained in Spotswood's Amended Complaint (ECF No. 48) have been addressed in a prior Memorandum Opinion of this Court.[1] *See Spotswood v. The Hertz Corporation*, WMN-16-1200, 2016 WL 6879938 (D. Md. Nov. 22, 2016). This Court once again recounts those allegations to provide context for the pending Motion for Class Certification.

---

[1] This case was reassigned from Judge William M. Nickerson upon his retirement to the undersigned on September 28, 2017.

This case arises from Hertz's assessment of "Administrative," "Loss of Use" and "Diminishment of Value" fees (collectively, the "fees") against Hertz customers who damaged their rental cars. (ECF No. 48, at ¶ 1.) The Plaintiff, Spotswood, is an Alabama lawyer who has previously served as co-counsel with the law firm representing him in this case. (ECF No. 100, at 17.) On July 3, 2013, he utilized his American Express Card to rent a car from Defendant at the Baltimore Washington International Airport. (*Id.* at ¶ 10.) Like other Hertz customers, Spotswood agreed to the terms of a "Rental Record" which contained terms specific to the transaction. (*Id.* at ¶¶ 11, 12.) Additionally, as a member of the Hertz #1 Gold Club, he had previously entered into a "Rental Agreement" with Hertz. (*Id.* at ¶ 12.) It is undisputed that the Rental Agreement and the Rental Record form the entire contract between the two parties. (*Id.* at ¶ 14; ECF No. 90, at 4.)

The Agreement provides that the renter of the vehicle is "responsible for any and all loss of or damage to the car resulting from any cause including but not limited to collision, rollover, theft, vandalism, seizure, fire, flood, hail or other acts of nature or God regardless of fault." (ECF No. 16-2, at 12.) The Agreement further provides that the renter's "responsibility will not exceed the greater of the retail fair market value of the car and its manufacturer buyback program value at the time the car is lost or damaged, less its salvage value, plus actual towing, storage and impound fees, an administrative charge and a reasonable charge for loss of use." (*Id.*) The Agreement also permits Defendant to charge the renter's "credit, charge or debit card for these losses, costs and charges, together with any other applicable charges, at or following the completion of the rental." (*Id.*) Spotswood alleges that all members of the putative class, whether members of the Gold Club or otherwise, must consent to a

substantially similar agreement to rent vehicles from Hertz. (*Id.*) The Agreement is allegedly non-negotiable; all renters of Hertz vehicles must accept the contract, drafted by Hertz, without change. (*Id.* at ¶ 13.)

On July 5, 2013 Spotswood was involved in a minor parking lot accident which left the car he had rented from Hertz safely operable but slightly damaged. (*Id.* at ¶ 18.) After returning the rental vehicle, Hertz demanded the following charges related to the accident:

| | |
|---|---|
| Repairs to the vehicle: | $662.90 |
| Administration Fees: | $85.39 |
| Loss of Use: | $362.94 |
| Diminishment of Value: | $111.80 |

(*Id.* at ¶ 20.)

Because Spotswood had declined Hertz's loss damage insurance, the claim for this accident was submitted to American Express which provided car rental insurance through Spotswood's American Express credit card. (*Id.* at ¶ 19.) American Express agreed to pay, and has paid for, the Repairs and for one half of the Loss of Use fee, but has declined to pay the Administrative and Diminishment of Value Fees. (*Id.* at ¶ 21.) Hertz maintains that Spotswood is responsible for the fees unpaid by American Express, which amount to $378.66. (*Id.* at ¶ 22.) Spotswood's position is that Hertz has breached its Rental Agreements by imposing the Loss of Use, Administrative, and Diminishment of Value fees. (*Id.* at ¶ 55.) Accordingly, he has refused to pay these fees. (Pl.'s Dep. at 103:14-104:11, ECF No. 85-9.)

## II.    Procedural History

Plaintiff initially filed this suit as a putative class action in the Superior Court of New Jersey, Bergen County, on April 6, 2015. (ECF No.1-1.) Hertz removed this case to the United States District Court for the District of New Jersey (ECF No. 1) and subsequently moved to transfer this action to this Court. (ECF No. 11.) Defendants' Motion was granted on October 27, 2015. (ECF No. 28.) On May 20, 2016, Spotswood filed an Amended Complaint, which listed six counts (ECF No. 48). On June 3, 2016 Hertz moved to dismiss the Amended Complaint. (ECF No. 50.)

On November 22, 2016, Judge William M. Nickerson of this Court dismissed five of the six counts in Spotswood's Complaint, allowing him to proceed only with his breach of contract claim. In reaching this decision, this Court found that the Rental Agreement permitted Hertz to charge all three types of fees at issue in this lawsuit (*i.e.*, the Administrative, Loss of Use, and Diminishment of Value fees). *Spotswood*, 2016 WL 6879938, at *3. Accordingly, Spotswood could only pursue a breach of contract claim on the narrow theory that the fees charged, while not foreclosed by the Rental Agreement, may not have been "reasonably related" to the actual costs Hertz incurred. *Spotswood*, 2016 WL 6879938, at *5-6. This theory requires individualized fact findings with respect to each type of fee. The Administrative fees, while not necessarily required to precisely match the actual administrative costs associated with each and every accident, must at least be "reasonably related" to Hertz's actual costs. *Id.* at *4. As to the Loss of Use fees, this Court determined that they, too, must represent a "reasonable" reimbursement for Hertz's temporary inability to rent one of its vehicles, and might require a showing of financial loss. *Id.* at *5. Finally, the Diminishment of Value fee must also be "reasonably related to the actual harm suffered" by Hertz, which

would require an assessment of the vehicle's change in market value before and after its repair. *Id.* at *6.  Altogether, the narrow theory of recovery this Court permitted Spotswood to pursue would require an analysis of each vehicle accident and corresponding fee assessed.

### III.    Class Certification Arguments.

Following an initial round of discovery, Spotswood filed the pending Motion for Class Certification (ECF No. 85.)  In the Motion, Plaintiff seeks certification of one of two alternative classes: a Seven Jurisdiction Class and a Maryland Class.[2]  Spotswood defines the Seven Jurisdiction Class as follows:

> All persons and entities who rented a Hertz vehicle in the District of Columbia, Maryland, Massachusetts, New York, Rhode Island, South Carolina, or Virginia under the Hertz Gold Member form contract and who were charged during the class period a diminishment of value fee, a loss of use fee, and/or an administrative fee.

> (ECF No. 85-1, at 3.)

Spotswood proposes the following class period for the Seven Jurisdiction Class:

> The class period for the Seven Jurisdiction Class begins six years before April 6, 2015, or the number of years of the limitation periods of the states in the class, and ends on or shortly after October 23, 2016, when the form contract at issue was discontinued by Hertz.

> (*Id.*)

Alternatively, Spotswood seeks to certify a Maryland Class, which is defined similarly to the Seven Jurisdiction Class but includes only persons and entities who rented a Hertz vehicle in Maryland.  (*Id.* at 4.)  The class period for the proposed Maryland Class begins on

---

[2] Although Spotswood's Motion also sought certification of a "National Class," he has since withdrawn this proposal.  (ECF No. 100, at 2 n.1.)

April 6, 2012 and ends on or shortly after October 23, 2016. (*Id.*) Excluded from both classes are five categories of persons and entities:

(1) Municipalities, governmental entities, any individual or entity currently in bankruptcy, any individual or entity whose obligations have been discharged through bankruptcy, and any judicial officer who has presided over this case;

(2) All Hertz Platinum Members who commenced a Hertz rental under the "Hertz Platinum Terms and Conditions" on or after March 4, 2016;

(3) All persons and entities whose rental commenced pursuant to an agreement with certain known insurance companies who have an agreement with Hertz to waive or alter the Fees;

(4) All persons and entities whose rental commenced from non-Hertz, corporate-owned locations;

(5) All persons and entities who were covered by Hertz's insurance loss damage waiver insurance.

Spotswood warrants that this suit is "particularly suitable" for class treatment because it revolves around uniform conduct and a boilerplate contract. (ECF No. 85-1, at 11.) Framing the case in this manner, Spotswood argues that the Rule 23 class certification requirements are easily satisfied. He further argues that once the multitude of Hertz Gold Members who were charged the allegedly improper fees are located using Hertz's customer data, the Court need only determine whether Hertz violated the terms of its single, uniform contract (the Rental Agreement) by engaging in a uniform act of misconduct (charging the disputed fees). (*Id.* at 15, 30.)

Things are not so simple according to Hertz. To find the putative class members, it would have to manually sift through hundreds of thousands of business records across multiple databases. (ECF No. 90, at 13.) Plaintiff's contention that the contracts are "uniform" is confounded by the appearance of an arbitration agreement in every Rental Record issued since September 2013. (*Id.* at 22, 25, 29.) Moreover, because this Court's prior

ruling requires individualized inquiries concerning the costs associated with each accident and the fees that followed, individualized inquires would sunder this class action into thousands of mini-trials. (*Id.* at 16-21.) Finally, Hertz alternatively argues that Spotswood cannot adequately represent the interests of the putative class because of his close ties with class counsel. (*Id.* at 30-31.)

## STANDARD OF REVIEW

To obtain class certification, the Plaintiffs must meet all four requirements of Federal Rule of Civil Procedure 23(a), and at least one of the requirements of Rule 23(b). *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003). Pursuant to an "implicit threshold requirement" of Rule 23(a), a plaintiff must establish that the class is ascertainable. *EQT Production Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). Having met this basic requirement, the plaintiff must then establish the requirements of numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). With respect to Rule 23(b), Spotswood seeks certification of the putative class under Rule 23(b)(3), which requires a finding that common questions "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The plaintiff must establish that the class certification requirements have been met by a preponderance of the evidence. *Brown v. Nucor Corp.*, 785 F.3d 895, 931-32 (4th Cir. 2015).

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348, 131 S. Ct. 2541, 2550 (2011) (internal quotation marks and citation omitted). "Rule 23

does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common issues of law or fact, etc." *Id.* at 351. In ruling on a class certification motion, a court must take a close look at the facts relevant to the certification question, even if those facts "tend to overlap with the merits of the underlying case." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006); *accord Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 366 (4th Cir. 2004) ("[W]hile an evaluation of the merits . . . is not part of a Rule 23 analysis, the factors spelled out in Rule 23 must be addressed through findings, even if they overlap with issues on the merits.").

The Supreme Court recently noted that "'sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question,' and that certification is proper only if 'the trial court is satisfied, after a *rigorous analysis*, that the prerequisites of Rule 23(a) have been satisfied.'" *Wal-Mart*, 564 U.S. at 350-51 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982)) (emphasis added); *see also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978) ("[T]he class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'") (quoting *Mercantile Nat. Bank v. Langdeau*, 371 U.S. 555, 558 (1963)).

## ANALYSIS

### I. Spotswood's Request to Exclude Evidence.

Hertz has produced two declarations to support its opposition to class certification. One is a Declaration of Jeffrey Gill, Hertz's Director of Subrogation, which describes the laborious process Hertz would need to endure to identify members of the putative class. (ECF

No. 90-5.)  The second is a Declaration of Richard P. McEvily, Hertz's Senior Vice President and Deputy General Counsel, which describes variations in the rental contracts among Hertz customers and excerpts an arbitration and class action waiver provisions contained in every Rental Record issued since September 2013.  (ECF No. 90-1.)

Pursuant to Rule 37(c) of the Federal Rules of Civil Procedure, Spotswood seeks to exclude these declarations and the Rental Record excerpt, alleging that Hertz failed to produce this evidence in response to relevant discovery requests.  (ECF No. 100, at 2-3.)  He argues that Hertz should have disclosed the Rental Record excerpt which appears in the McEvily declaration in response to Request for Production No. 4, which sought "exemplar forms of all documents that have been used in transactions with Plaintiff and putative class members, including . . . contracts." (ECF No. 100-1, at ¶ 4.)  Spotswood also argues that the declarations should have been produced in response to its request for "all documents that Defendant expects to rely upon in support of its opposition to Plaintiff's Motion for Class Certification." (ECF No. 100-1, at ¶ 20.)  Because the declarations and their contents were responsive to these Requests, Spotswood argues, Hertz should not be permitted to introduce them now, in opposition to class certification.

Rule 37(c) of the Federal Rules of Civil Procedure precludes a party from using information it failed to disclose pursuant to Rule 26(a) or (e) "on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). District courts have broad discretion to determine whether a party's non-disclosure of evidence is substantially justified or harmless. *Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014). The Fourth Circuit has announced five factors to guide this analysis:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence.

*Id.* (quoting *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596-97 (4th Cir. 2003)). The non-disclosing party bears the burden of establishing these factors, but courts are "not required to tick through each of the factors" in explaining their analyses. *Id.*

Exclusion is not warranted in this case because Hertz complied with its discovery obligations. First, the parties agreed that Hertz was not required to produce the exemplar Rental Records in response to Request for Production No. 4. (Decl. of Michelle R. Singer at ¶¶ 6-8, ECF No. 103-2.) Second, Hertz *did* disclose the Rental Records, which Spotswood claims it "never produced," five of which were personally executed by Spotswood himself. (ECF No. 100, at 2; ECF No. 103-2, at 9-10.) Finally, Spotswood indicated that he had "no dispute" over Hertz's objection to Request for Production No. 20, eliminating Spotswood's obligation to produce the declarations or any other evidence it would rely upon to oppose the Motion for Class Certification. (ECF No. 103-4, at 2.)

This Court rejects Spotswood's claim that Hertz has "ambush[ed]" him with the declarations of Jeffrey Gill and Richard P. McEvily. (ECF No. 100, at 7.) Jeffrey Gill, acting as Hertz's corporate designee, submitted to a full-day deposition. (ECF No. 85-4.) His declaration merely supplements, and in no way contradicts, that testimony. Moreover, it is no secret that Hertz intended to defend this action based on the presence of arbitration agreements and class action waivers. Hertz indicated as much in its Answer to the Amended Complaint. (ECF No. 57, at 12.) As Hertz has adequately demonstrated its compliance with

its discovery obligations, and Spotswood has suffered no unfair surprise, this Court will consider the declarations.

## II.     Motion for Class Certification.

As explained *supra*, to obtain class certification, Spotswood must meet all four requirements of Rule 23(a) of the Federal Rules of Civil Procedure and fall within one of three categories of class actions enumerated by Rule 23(b).  *See Gunnells*, 348 F.3d at 423.  Under Rule 23(a), Spotswood must show numerosity, commonality, typicality, and adequacy of representation.  *See* Fed. R. Civ. P. 23(a).  As Spotswood seeks class certification pursuant to Rule 23(b)(3), he must also demonstrate that common questions predominate, rendering class certification superior to other methods of adjudication.  Fed. R. Civ. P. 23(b)(3).

Spotswood's proposed classes do not meet these requirements.  First, Spotswood has failed to demonstrate a feasible way of ascertaining the members of the putative class by using Hertz's customer data.  Second, individualized questions concerning the reasonableness of fees assessed against each class member overwhelm any other issues.  Third, many of the proposed class members have signed Rental Records which contain arbitration and class action waiver provisions, preventing them from pursuing this action entirely.  Finally, Spotswood cannot adequately represent the interests of the class because of the unique posture of his legal claims and his long-standing relationship with the putative class counsel.

For these reasons, this Court finds that Plaintiff has failed to meet the requirements of ascertainability, numerosity, commonality, typicality, and adequacy of representation.  While Hertz has identified other compelling reasons to deny class certification, this Court need not address each of its arguments.  *See Kidwell v. Transportation Commc'ns Intern. Union*, 946 F.2d 283,

305 (4th Cir. 1991) ("We find it unnecessarily to address all the plaintiffs' or the union's contentions because the plaintiffs have not met the "typicality" and "commonality" requirements of Rule 23."). Moreover, as Spotswood as failed to meet any of the requirements of Rule 23(a), he has *a fortiori* also failed to establish that a class action is warranted pursuant to Rule 23(b)(3). *Ostrof v. State Farm Mut. Auto. Ins. Co.*, 200 F.R.D. 521, 528 (D. Md. 2001) (concluding that the requirements of rule 23(b)(3) had not been satisfied because plaintiffs had failed to demonstrate that they had satisfied Rule 23(a)). Accordingly, this Memorandum Opinion focuses its analysis on the requirements of Rule 23(a).

### A. Ascertainability.

Both the Seven Jurisdiction Class and the Maryland Class consist of "[a]ll persons and entities who rented a Hertz vehicle . . . under the Hertz Gold Member form contract and who were charged[3] during the class period a diminishment of value fee, a loss of use fee, and/or an administrative fee." From these classes, Spotswood seeks to exclude five categories of customers, including, *inter alia*, municipalities, governmental entities, and those whose rentals commenced pursuant to an agreement with certain insurance companies.

In addition to meeting the explicit requirements set forth in Rule 23, Spotswood must show that the members of these proposed classes are "readily identifiable." *EQT*, 764 F.3d at 358 (4th Cir. 2014) (quoting *Hammond v. Powell*, 462 F.2d 1053, 1055 (4th Cir. 1972). This "implied" requirement of Rule 23(a), referred to as "ascertainability," requires the plaintiff to demonstrate that class members are possible to identify without extensive and individualized

---

[3] Although Spotswood's Motion for Class Certification also refers to a class of persons who were "charged and paid" a fee, he has subsequently clarified that the putative class would only consist of those who were charged a fee—not necessarily those who paid it. (ECF No. 100, at 5.)

fact-finding. *EQT*, 764 F.3d at 358. Accordingly, Spotswood must show that this Court possesses an administratively feasible method of sifting class members from other parties. *EQT*, 764 F.3d at 359.

To meet this requirement, the plaintiff cannot merely identify a mass of data which could aid the process of identifying class members. As opinions of the United States Court of Appeals for the Fourth Circuit and this Court have indicated, the Plaintiff must also provide an efficient method of using this information. In *EQT*, the United States Court of Appeals for the Fourth Circuit highlighted the "serious ascertainability issues" posed by using a cache of land records to identify class members. *EQT*, 764 F.3d at 359. The Fourth Circuit faulted this method for requiring a "complicated and individualized process" to resolve numerous title-defect issues to determine which purported land owners belonged in the class and which did not. *Id.* at 359. For this reason and others, the Court vacated and remanded the district court's class certification decision. *Id.* at 371. On remand, it instructed the district court to "give greater consideration to the administrative challenges it will face using land records." *Id.* at 360.

Accordingly, Plaintiff cannot require the Defendant to manually search thousands of records to locate the putative class members. In *Piotrowski v. Wells Fargo Bank, NA*, DKC-11-3758, 2015 WL 4602591 (D. Md. July 29, 2015), this Court determined that plaintiff had failed to identify an administratively feasible method of locating a class of persons using Wells Fargo customer data. *Id.* at *4. Because Wells Fargo did not maintain relevant customer data in a searchable format, it "would have to review imaged or scanned documents on an individual loan-by-loan basis" to identify potential class members. *Id.* at *18. Plaintiffs argued that the

class was nonetheless ascertainable because Wells Fargo had sufficient records to identify the class members. *Id.* The Court rejected this contention, finding that the administrative difficulties involved with locating class members in this manner were too onerous and would essentially require "mini trials" to determine which borrowers belonged in the class.

Spotswood argues that its proposed classes of individuals, both of which exclude five categories of persons and entities, "can be easily identified from Hertz's records." (ECF No. 85-1, at 30.) He argues that Hertz need only search its database of rentals involved in accidents, called "Lambda," to determine which Hertz Gold Members were charged the disputed fees. (*Id.* at 30-31.) Then, by "audit trail or otherwise," Spotswood argues that Hertz can determine who paid the fees. (*Id.* at 31.) To support these claims, Spotswood heavily relies on the deposition testimony of Jeffrey Gill, the Director of Subrogation at Hertz, who testified at length about how Hertz assess fines through the Lambda system. (ECF No. 85-4.)[4]

Gill's deposition testimony undercuts, rather than supports, Spotswood's argument. At his deposition, Gill explained that Hertz often charges third-parties for accidents, not its customers. (ECF No. 85-4, at 102:5-9.) Accordingly, Spotswood must identify some administratively feasible method of searching Hertz's data for class members, rather than non-member third-parties. Gill's testimony reveals that no such method exists. While Lambda contains a large amount of information designed to facilitate charging Hertz customers, it cannot be used to isolate putative class members without a lengthy, claim-by-claim

---

[4] Spotswood has produced excerpts from Gill's deposition testimony located at ECF No. 85-4. Hertz has produced other portions of this deposition at ECF No. 91, which was filed under seal.

investigation. As Gill explained, Lambda "is like a repository, but it doesn't necessarily tie back to who's paying the claim." (ECF No. 85-4, at 102:12-105:2.) The "antiquated system" does not provide any means of generating a curated report of entities or person charged fees. (ECF No. 91, at 105:22-107:3) (Sealed.)[5]

Gill's declaration elaborates on the difficulty of using Lambda to locate individuals charged the disputed fees. (ECF No. 90-5.) In it, he explains that "Hertz's computer systems cannot generate a report that identifies Fee charges to rental car customers only, as opposed to the many other types of non-customer persons and entities that Hertz in many instances charges." (ECF No. 90-5, at ¶ 5.) As Hertz uses a third-party for some of its billing practices, Lambda does not always record the recipient of a fee charge. (*Id.* at ¶ 7.) Even when this information is available, it cannot be obtained in an efficient manner. (*Id.* at ¶ 8.) To discover the identify of charged parties, Hertz employees would need to access a separate program, called "FileNet," search the system by claim number, and then review the associated files for a damage packet sent to Hertz customers. (*Id.*) The employee would also need to review the packet for an assessed fee, because not all demand packets include one. (*Id.*) Alternatively, having already obtained a code corresponding to the intended recipient of a demand packet, a Lambda user could search the system for a billed fee amount that corresponds to the date associated with that code. (*Id.*) These processes cannot be automated; Hertz personnel would need to investigate hundreds of thousands of claim records and isolate those that fit into the

---

[5] Spotswood cites ECF No. 85-4, 276:19-277:4 for the proposition that "Hertz maintains records which can identify" an excluded category of potential class members consisting of "persons and entities whose rental commenced pursuant to an agreement with certain known insurance companies who have an agreement with Hertz to waive or alter the fees." Even if these records *could* identify this information, Spotswood has failed to provide an administratively feasible means of the using Hertz records to find the class members.

proposed classes, which excludes five categories of Hertz customers. (*Id.* at ¶ 9.) This mind-numbing process would be time consuming, potentially taking a team of dedicated workers many months to complete, and error prone. (*Id.*)

By glossing over these complications, Spotswood has failed to demonstrate how his proposed classes could be ascertained. This case would require the same manual search of customer records that this Court found unacceptable in *Piotrowski*. As that case explains, a plaintiff may not simply point to a defendant's computer records and demanded that it conjure up a class. In this case, Spotswood has done little else. This Court has considered the difficulties accompanying a search of Hertz's records for the desired information and finds that there is no administratively feasible method of locating the gerrymandered sub-set of Hertz customers targeted by Spotswood's proposed class actions.

## B. Numerosity.

Rule 23(a)(1) provides that one of the requirements to bring a class action is that the class be "so numerous that joinder of all members is impracticable." The Fourth Circuit has held that "[n]o specified number is needed to maintain a class action." *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984) (quoting *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967)). This Court has previously noted that, generally speaking, "courts find classes of at least 40 members sufficiently large to satisfy the impracticability requirement." *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 497 (D. Md. 1998). In fact, "'[a] class consisting of as few as 25 to 30 members raises the presumption that joinder would be impractical.'" *Baehr*, 2014 WL 346635 at 8 (quoting *Dameron v. Sinai Hosp. of Balt., Inc.*, 595 F. Supp. 1404, 1408 (D. Md. 1984)). By its nature, an unascertainable class

cannot satisfy the numerosity requirement. *See EQT*, 764 F.3d at 359 (explaining that, because plaintiff failed to meet the ascertainability requirement, the court lacked even a "rough estimate" of the class size); *Dykes v. Portfolio Recovery Associates, LLC*, 2016 WL 346959, at (E.D. Va. 2016) ("It is difficult to imagine a scenario in which a plaintiff would fail to demonstrate that a class is ascertainable yet would somehow manage to satisfy numerosity.")

To satisfy this requirement, Spotswood refers this Court to a Hertz spreadsheet which records the dates of Hertz vehicle accidents, the state in which the rental commenced, and a corresponding "transaction amount." (ECF No. 85-8.) At his deposition, Gill clarified that this spreadsheet was produced using a computer application called Web Focus, which pulls data from Lambda and other systems. (ECF No. 85-4, at 328:24-329:7.) Gill testified that the spreadsheet reported every recovery on administrative, loss of use, and diminished value fees from April 2012 until November 30, 2017. (ECF No. 85-4, at 328:1-329:3.) Based on this spreadsheet, Spotswood maintains that "[i]n Maryland alone, Hertz's internal records show over 1700 Fees were charged and paid and over 600 Loss of Use Fees alone were charged and paid by class members during the class period." (ECF No. 85-1, at 12.)

While this spreadsheet provides evidence that Hertz frequently assesses fees, it does not reveal whether these fees were assessed against any putative class members. To determine whether any of the transactions recorded by this document correspond to a putative class member, one would need to match the "case number" provided on the spreadsheet with the individual or entity Hertz charged a fee. As Gill's deposition testimony and declaration reveal, however, there is simply no administratively feasible method of matching the fees on this spreadsheet to the person or entity charged. Spotswood has merely referenced this list of

transactions and invited this Court to conjecture that a sufficient ratio of these fee recoveries corresponds to a class member. This demonstration does not suffice. As the spreadsheet fails to identify even a single class member, Spotswood has failed his burden to show that the putative classes are sufficiently numerous to warrant a class action.

### C. Commonality.

Rule 23(a)(2) requires a question of law or fact common to the class. "A common question is one that can be resolved for each class member in a single hearing," and does not "turn[] on a consideration of the individual circumstances of each class member." *Thorn v. Jefferson–Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (internal quotation marks and citation omitted). Furthermore, "a representative plaintiff cannot establish commonality under [Rule 23(a)(2)] if the court must investigate each plaintiff's individual claim." *Ostrof v. State Farm Mut. Auto. Ins. Co.,* 200 F.R.D. 521, 528 (D.Md.2001) (quoting *Peoples v. Wendover Funding Inc.,* 179 F.R.D. 492, 498 (D.Md.1998)). The Fourth Circuit has held that, "in a class action brought under Rule 23(b)(3), the 'commonality' requirement of Rule 23(a)(2) is 'subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over' other questions." *Lienhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 147 n. 4 (4th Cir. 2001) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609 (1997)). Therefore, in the Fourth Circuit "[t]he common questions must be dispositive and overshadow other issues." *Lienhart*, 255 F.3d at 146.

Spotswood asserts that it has satisfied this requirement because Hertz's liability "turns solely on its common course of conduct as applied to a uniform contract under shared law." (ECF No. 85-1, at 24.) He proposes a list of common questions which predominate over

others, "foremost" of which are (1) whether Hertz was authorized to charge the Fees under the form contract; and (2) if so, whether the Fees are reasonably related to costs that Hertz incurred. (*Id.*) To support these claims, Spotswood likens this case to several decisions of other courts which found the alleged breach of uniform contracts suitable for class action adjudication. *See, e.g.*, *In re Med. Capital Sec. Litig.*, SAML 10-2145 DOC (RNBx), 2011 WL 5067208, at *3 (collecting cases to support the proposition that "[c]ourts routinely certify actions involving breaches of form contracts").

Spotswood has overlooked a host of thorny issues which subsume the common questions he has identified. This Court has permitted Spotswood to proceed on a narrow theory of recovery which requires a case-by-case analysis of each fee to determine whether they meet this reasonableness requirement. Moreover, individualized questions relating to arbitrability pose a threshold obstacle to many of the class members' claims. Accordingly, Spotswood has failed to meet the commonality requirement and certainly has not satisfied the more rigorous 23(b)(3) requirement of predominance.

1. **Spotswood may only proceed on a narrow legal theory which requires case-by-case findings of fact.**

As described *supra*, this Court has permitted Spotswood to proceed with his one breach of contract claim on the narrow theory that the Administrative, Loss of Use, and Diminishment of Value fees totaling $560.13[6] were unreasonable in relation to the actual costs suffered by Hertz. *Spotswood*, 2016 WL 6879938, at *5-6. To assess this claim, this Court must first determine the losses it sustained from accidents involving its vehicles and then determine

---

[6] With the payments previously made by American Express, Spotswood is only responsible for a total of $378.66.

whether the actual fee charged in a given case was reasonable in relation to Hertz's costs. As this Court has previously held, case-by-case reasonableness inquiries such as this are not suitable for class adjudication. *Ross-Randolph v. Allstate Ins. Co.*, DKC-99-3344, 2001 WL 36042162, at *6-7 (D. Md. May 11, 2001).

In *Ross-Randolph*, this Court declined to certify a putative class action arising from Allstate's alleged unlawful failure to pay insurance claims. *Id.* at *1. Under a relevant Maryland statute, Allstate's liability turned "on whether a particular medical procedure is necessary and an individual claimant's charges derived therefrom are reasonable." *Id.* at *6. Because "individual factual determinations" of this kind would "constitute a significant part of [the] action" this Court determined that plaintiffs had failed to satisfy the commonality and predominance requirements. *Id.* at *9; *see also Ostrof v. State Farm Auto. Ins. Co.*, 200 F.R.D. 521, 528-29 (D. Md. 2001) (denying class certification on similar grounds).

Spotswood attempts to distinguish *Ross-Randolph* and *Ostrof* as involving a "statute mandating an examination of each individual class member's claims" and dealing with "individualized medical treatments." (ECF No. 100, at 11.) This is a distinction without a difference. In both cases, this Court determined that class certification was not appropriate because the governing "reasonableness" standard required threshold fact-findings unique to each class member. As in *Ross-Randolph* and *Ostrof*, this Court must first find facts related to each class member—in this case, the losses sustained by Hertz in connection with each vehicle collision. Then, this Court must consider whether the fee charged in a given case was reasonably related to the losses Hertz incurred, just as the *Ross-Randolph* and *Ostrof* courts had to compare the insurance claims submitted with the underlying medical procedure. As a result

of this reasonableness inquiry, the class would inevitably fracture into countless mini-trials, each designed to determine the extent to which a given accident caused Hertz to incur administrative costs or reduced a vehicle's value.

Spotswood attempts to avoid this inevitable conclusion, arguing that this Court need only focus on Hertz's method of calculating fees to determine whether the fee is reasonable. Because Hertz uses standard formulas to assess fees, "if a Fee is unreasonable for one putative class member, it is necessarily unreasonable for all," he argues. (ECF No. 100, at 3.) The reasonableness of a fee, however, does not turn on how Hertz calculates it. As Judge Nickerson's prior ruling makes clear, the relevant inquiry is whether the fees represent a reasonable approximation of the loss Hertz incurred in a given case. A standard formula may or may not produce a reasonable relationship between fees charged and damages resulting from a given accident; that determination still requires this Court to determine whether the fees were reasonable in relation to the losses Hertz sustained in each accident.[7]

2. **Variations among agreements between Hertz and its customers subsumes any common questions.**

Spotswood repeatedly argues that class certification is proper in this case because it involves a uniform contract. (ECF No. 85-1, at 15, 21, 24.) This argument is misguided. As Hertz notes, this Court has already held that the Administrative, Loss of Use, and Diminishment of Value fees were permissible under the terms of the contract. Spotswood may only proceed on the theory that they were unreasonable in certain cases. Accordingly,

---

[7] To support its argument that this Court need not undergo individualized factual findings, Spotswood highlights this Court's determination that Defendant need not "calculate and charge the actual administrative costs incurred each and every time a vehicle is damaged." *Spotswood*, 2016 WL 6879938, at *4. This statement merely clarifies that Hertz need not prove at trial that its administrative fees exactly match its actual administrative costs.

this class action does not hinge on a single, open question of contract interpretation. That question has already been resolved in favor of Hertz.

Additionally, Hertz challenges Spotswood's premise that a uniform contract governs this dispute. In his Amended Complaint, Spotswood alleged the existence of two pertinent agreements entered into by the potential class members: a Rental Agreement and Rental Record, the latter of which contains "transaction specific information." (ECF No. 84, at ¶ 11.) Hertz represents that, since September 2013, each Rental Record has contained an arbitration provision and a class action waiver. (ECF No. 90, at 22.) The Declaration of Richard P. McEvily, Hertz's Senior Vice President and Deputy General Counsel excerpts these provisions. (ECF No. 90-2, at ¶ 7.) Their terms require "arbitration or a small claims court case on an individual basis, rather than jury trials or class actions." (*Id.*) The arbitration provision explicitly reserves several issues to the decision of the arbitrator, as follows: "In an arbitration under this Arbitration Provision, all issues are for the arbitrator to decide, including his or her own jurisdiction, and any objections with respect to the existence, scope or validity of this Arbitration Provision." (*Id.*)

As this Court has noted previously, "where certain members of a class are subject to contracts containing arbitration clauses, while other class members are not, those differences in contractual relationships destroy[] commonality and typicality of the class." *In re Titanium Dioxide Antitrust Litigation*, 962 F. Supp. 2d 840, 861 (D. Md. 2013). In this case, potential members of the putative class have signed arbitration and class action waiver agreements, potentially prohibiting them from joining this class action, while others have not. This variation among the Hertz Rental Records divides the class, leaving some susceptible to unique

defenses and others impervious to them. As threshold issues of arbitrability predominate over common merits questions, the requisite commonality is not present in this case.

Spotswood argues that the arbitration provisions are not applicable in this case because they exempt "claims for property damage." (ECF No. 90-2, at ¶ 7.) The arbitration provisions, however, explicitly reserves for the arbitrator all decisions concerning arbitrability and the scope of the arbitration agreement. These provisions divest this Court of its power to determine the threshold issue of arbitrability. *See Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 539 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue.") Moreover, even if Spotswood's argument had not been foreclosed by the terms of the arbitration agreement, it nevertheless presents an initial obstacle to an unknown number of class members. For these reasons, Spotswood has failed to show that his proposed classes satisfy the commonality requirement.

### D. Typicality

Rule 23(a)(3) requires that "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Courts have recognized that the commonality and typicality requirements of Rule 23(a) tend to merge. "Both serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n. 13 (1982). As this Court has previously noted, the typicality requirement determines "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may

properly attribute a collective nature to the challenged conduct." *Bullock v. Bd. of Educ. of Montgomery County*, 210 F.R.D. 556, 560 (D. Md. 2002) (citations omitted). The class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998). Essentially, the typicality requirement ensures that "only those plaintiffs who can advance the same factual and legal arguments may be grouped together as a class." *Id.* at 340. "The essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff, so goes the claims of the class.'" *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006) (citing Broussard, 155 F.3d at 340).

As this Court has discussed *supra*, Spotswood cannot meet the typicality requirement because he did not sign an arbitration agreement while other putative class members did. *See In re Titanium Dioxide Antitrust Litigation*, 962 F. Supp. 2d 840, 861 (D. Md. 2013) ("[W]here certain members of a class are subject to contracts containing arbitration clauses, while other class members are not, those differences in contractual relationships destroy[] commonality and typicality of the class.")

Hertz presents an additional reason why Spotswood cannot satisfy this requirement: he did not suffer any economic injury related to the alleged breach of contract, but the putative classes potentially embraces those who did. (ECF No. 90, at 26-27.) As the putative classes theoretically embrace certain people and entities which were charged a fee, it also embraces those who *paid* the fee. Spotswood admitted that he did not pay the fee. (Pl. Dep. 103:14-104:11.) Moreover, he has presented no evidence of other types of damages, and even admitted that he did not even know if his credit score was affected by his decision not to pay

Hertz's fees. (ECF No. 85-9, at 98:13-103:7.) Accordingly, he did not "suffer the same injury" as the putative class members. *See, e.g., Kidwell,* 946 F.2d at 305 (finding that plaintiffs had failed to meet the typicality requirement because "plaintiff have not suffered any injury, never mind an injury similar to that of those whom they seek to represent"). As Plaintiff's claims potentially differ substantially from other members of the putative class, he has failed to meet the typicality requirement of Rule 23(a).

### E. Adequacy of Representation

The final prerequisite under Rule 23(a) is that the persons representing the proposed class must be able "fairly and adequately to protect the interests" of all members of the class. The adequacy inquiry under Rule 23(a)(4) serves to uncover a lack of common interests between named parties and the class they seek to represent. *See Gen. Tel. Co.,* 457 U.S. at 157–58 n. 13, 102 S.Ct. 2364. Representation will be considered "adequate" if the attorneys representing the class are qualified and competent, and the class representatives are not disqualified by reason of interests antagonistic to the rest of the class. *Ostrof,* 200 F.R.D. at 530.

As this Court has previously held, "there is an overlap between the requirement of adequacy of representation and the requirement of typicality." *Wu v. MAMSI Life & Health Ins. Co.,* 269 F.R.D. 554, 564 (D. Md. 2010) (citing *Gen. Tel. Co.,* 457 U.S. at 157, 102 S. Ct. 2364). Accordingly, a class representative is not adequate if he is subject to unique defenses inapplicable to other class members. *Wu,* 269 F.R.D. at 564. In this case, Spotswood is not an adequate representative of the class because he is subject to unique defenses stemming from his refusal to pay the fees at issue in this case. *Ostrof,* 200 F.R.D. at 530 (finding that

plaintiff had failed to meet the adequacy of representation requirement because he was subject to unique defense that he not required to pay his healthcare providers for services he accused the defendant insurer of failing to cover).  Moreover, as discussed *supra*, he is not subject to the arbitration defenses which other putative class members must overcome.  For these reasons alone, Spotswood is not an adequate class representative.

Hertz identifies an additional, fundamental problem with Spotswood's representation. Spotswood, a lawyer, admits that he has served as co-counsel with the law firm representing him in this case, Heninger Garrison Davis, LLC.  (ECF No. 100, at 17) ("Spotswood and two partners . . . were co-counsel in two cases, only one of which is currently pending.").  At his deposition, he revealed that his law firm has "a very good relationship with the Heninger firm" and that he has "spent a lot of time" with Heninger attorneys.  (ECF No. 100-5, at 20:12-17; 115:14-23.)  Spotswood at least occasionally socializes with Steve Heninger, a partner at the firm, who Spotswood "certainly like[s] and consider[s] . . . to be a friend." (*Id.* at 21:2-5.)  Mr. Heninger, who lives just a few doors down from Spotswood, attended a birthday party for Spotswood's wife.  (*Id.* at 20:19-21:2.) Spotswood attempts to minimize these connections. He claims that Heninger and Spotswood do not socialize often and that any conflict of interest posed by their interactions is merely speculative.  (ECF No. 100, at 16-18.)

As several courts have recognized, close personal and financial ties between class counsel and the proposed representative seriously inhibit the class representative's ability to champion the class's interests.  In *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246 (11th Cir. 2003), the United States Court of Appeals for the Eleventh Circuit confronted similar issues surrounding a class representative, Roger London and his counsel, Robert Ader.  The Court

expressed concerns about London's "long-standing personal friendship" with his lawyer. 340 F.3d at 1255. The two also had former financial ties: London had previously served as Ader's stockbroker. *Id.* at 1249. The Court additionally noted that London had a relatively low financial stake in the class action, as the attorney's fees in the case would likely exceed his personal recovery. *Id.* at 1254. Given his modest financial interest in the outcome of the litigation, the Court recognized that London might be inappropriately concerned with helping his friend by maximizing attorney's fees. *Id.* at 1254-55. Given that this interest conflicted with the interests of the other class members, the Court determined that 23(a)(4)'s adequate representation prerequisite had not been satisfied. (*Id.* at 1255.); *see also Gordon v. Sonar Capital Management LLC*, 92 F. Supp. 3d 193, 199 (S.D.N.Y. 2015) (finding that "family, personal, and professional ties going back over a decade[] may compromise Gordon's ability to exercise independent judgment" as the class representative).

The interactions between Spotswood and his counsel's law firm creates a present conflict of interest which jeopardizes his ability to adequately represent the interests of other class members. The unique client-attorney relationship in this case raises additional concerns in light of the Heninger firm's potential fees, which would "far exceed" Spotswood's potential recovery, as it is limited by his admitted failure to pay the disputed fees. *London*, 340 F.3d 1246, 1254 (11th Cir. 2003). Given the close ties between Spotswood and the Heninger law firm, Spotswood "might be motivated to maximize" Heninger's attorney's fees. *Id.* This places him at odds with the putative class, as his ties with the Heninger firm poses a serious risk that he will authorize decisions—including settlement—which place his attorney's interests over his

fellow class members'. This risk is not acceptable. For this reason, Spotswood is not an adequate representative.

### F. Rule 23(b)(3)

Having determined that Spotswood has failed to satisfy Rule 23(a)'s requirements, this Court also concludes that the Requirements of Rule 23(b)(3) have not been satisfied. Rule 23(b)(3) requires a finding that common questions "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Fourth Circuit has held that the predominance requirement of Rule 23(b)(3) is "more stringent" than the commonality requirement of Rule 23(a). *See Thorn*, 445 F.3d at 319; *Lienhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 147 n.4 (4th Cir. 2001). Accordingly, the failure to satisfy the commonality requirement pursuant to Rule 23(a) requires a finding that common issues do not predominate under Rule 23(b)(3). *See Ostrof*, 200 F.R.D. at 530 (concluding, *a fortiori*, that the predominance requirement of Rule 23(b)(3) was not satisfied because plaintiff had failed to establish commonality requirement of rule 23(a)).

As explained above, the proposed classes are marred by individualized inquiries concerning the costs Hurtz sustained in connection with each accident and variations in the Rental Records. Facing these obstacles, the proposed classes would collapse into a series of mini-trials as this Court engaged in the "class-member-by-class-member and contract-by-contract inquiry" they require. *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d at 861. Accordingly, this Court finds neither that "the common questions of law or fact predominate

over questions affecting individual members" nor that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

## CONCLUSION

For the reasons stated above, Spotswood's Motion for Class Certification (ECF No. 85) is DENIED. This case shall proceed on Spotswood's individual claims.

A separate Order follows.

Dated:       February 7, 2019                                /s/
                                                      Richard D. Bennett
                                                      U.S. District Judge